60 F.3d 824
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Margaret A. PREKLER, Executrix of the Estate of George E.
Prekler, Plaintiff-Appellee,
v.
OWENS-CORNING FIBERGLAS CORPORATION, Defendant-Appellant,
and
A.P. Greene Refractories Company; Babcock & Wilcox Company;
Carey Canada, Incorporated, (Carey Mines, Limited);
Combustion Engineering, Incorporated; Eagle-Picher
Industries, Incorporated; Fibreboard Corporation, Pabco
Industrial Products Division; Flexitallic Gasket Company,
Incorporated; GAF Corporation; Garlock, Incorporated;
Pittsburgh-Corning Corporation, individually and as
successor-in-interest to Union Asbestos and Rubber Company
(UNARCO); Rutland Fire Clay Company; Turner & Newall,
P.L.C., individually and as alter ego of Keasby & Mattison;
W.R. Grace & Company, Connecticut; A.W. Chesterton Company;
Certainteed Corporation; Grant Wilson Inc.; John Crane
Incorporated; Owens-Illinois, Incorporated, Defendants,
v.
MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND,
Third Party Defendant.
 No. 94-1550.
 United States Court of Appeals, Fourth Circuit.
 Argued April 4, 1995.
Decided July 6, 1995.
 
 ARGUED: Eric Keith Englebardt, HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, SC, for appellant. E. Spencer Parris, MICHAELS, JONES, MARTIN & PARRIS LAW OFFICES, P.A., Raleigh, NC, for appellee. ON BRIEF: James B. Pressly, Jr., HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, SC, for appellant. Michael J. Brickman, NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, Charleston, SC, for appellee.
 Before WILKINS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Owens-Corning Fiberglas Corporation (Owens-Corning) appeals from a jury verdict for Margaret A. Prekler (Mrs. Prekler) in this asbestos products liability action, arguing that the district court abused its discretion in denying Owens-Corning's motions to continue the trial and to compel discovery. In addition, it maintains that the evidence was insufficient to support the verdict. Finding no error, we affirm.
 
 I.
 
 2
 From 1942 to 1976, George E. Prekler (Mr. Prekler) was employed as a laborer and boilermaker by the Diamond Shamrock Company in Painesville, Ohio. The parties do not dispute that during his employment Mr. Prekler was exposed to significant quantities of asbestos dust created when pipefitters and insulators in nearby areas cut and sawed blocks of asbestos-containing insulation. In 1990, Mr. Prekler was diagnosed with malignant, pleural mesothelioma--a rare cancer of the lining of the lung known to be caused by exposure to asbestos.
 
 
 3
 The Preklers[1] filed suit in the United States District Court for the Eastern District of North Carolina, naming Owens-Corning and several other manufacturers of asbestos-containing insulation as defendants.[2] At that time, asbestos products liability actions in the Eastern District of North Carolina were subject to two pretrial orders that set parameters and time limits for discovery and trial preparation. In accordance with the second pretrial order, Mrs. Prekler filed answers to standard interrogatories on November 9, 1990. Attached to the answers to interrogatories were medical release authorizations which gave Owens-Corning unlimited access to Mr. Prekler's medical records and other sources of information related to his claims.
 
 
 4
 On August 13, 1991, the case was transferred to the Eastern District of Pennsylvania pursuant to an order of the Judicial Panel on Multidistrict Litigation. In re Asbestos Prods. Liab. Litig. (No. VI), 771 F.Supp. 415 (J.P.M.L.1991). The Eastern District of Pennsylvania issued several pretrial orders addressing various matters such as designation of coordinating counsel and short-form summary judgment proceedings; one such order required submission of expert witness reports and the names of fact witnesses. The orders contained no prohibition of, or limitation on, discovery.
 
 
 5
 On November 30, 1993, the Eastern District of Pennsylvania transferred the case back to the Eastern District of North Carolina "for completion of necessary discovery, further mediation, [alternative dispute resolution] or other proceedings." Shortly thereafter, the district court set a trial date of January 18, 1994.
 
 
 6
 Approximately three weeks prior to trial, Owens-Corning filed a motion to continue, arguing that the trial date selected by the district court did not provide adequate time for compliance with Paragraph 7 of the second pretrial order. Paragraph 7 required Mrs. Prekler, no more than 150 days prior to trial, to supplement and finalize her list of fact and expert witnesses and the information on which they intended to rely; thereafter, Owens-Corning was given 20 days to respond in kind. Because the trial date was only 49 days after the entry of the transfer order, Owens-Corning argued that compliance with Paragraph 7 was impossible and that the trial should be continued.
 
 
 7
 After the district court denied the motion to continue, Owens-Corning filed a motion to compel discovery, seeking to obtain tissue samples, x-rays, pathology reports, and medical records of Mr. Prekler. The district court denied this motion as well. When Owens-Corning renewed both motions at trial, the court commented that Owens-Corning had received all necessary disclosures in 1990 and that the transfer to the Eastern District of Pennsylvania had not stayed discovery; hence, there was "nothing in the world to keep [Owens-Corning] from finding everything [it] need[ed] to find out about this case." The jury returned a verdict for Mrs. Prekler and awarded $477,085 in damages.
 
 II.
 
 8
 Owens-Corning first asserts that the district court erred in denying its motions to continue the trial and to compel discovery. We review the denial of these motions for abuse of discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir.1995) (motion to compel discovery); United States v. Moore, 27 F.3d 969, 973 (4th Cir.) (motion to continue trial), cert. denied, 115 S.Ct. 459 (1994). Because the motion to compel discovery sought essentially the same information that would have been obtained through strict compliance with Paragraph 7--the object of the motion to continue--we address both motions together.
 
 
 9
 We have previously addressed the significance of pretrial orders in asbestos litigation. See Barwick v. Celotex Corp., 736 F.2d 946, 954-55 (4th Cir.1984). In Barwick, we implicitly approved a pretrial order similar to the one at issue here, noting that "[t]he key to proper management in asbestosis cases is the pretrial order which requires all parties to complete certain tasks within a definite time frame." Id. at 954. We also noted that the purpose of such orders is the expeditious resolution of asbestos-related claims, which otherwise might become mired in years of discovery. See id. Additionally, we recognized that "[t]he requirements of [a] pretrial order are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice." Id. We cannot say that the district court abused its discretion by denying Owens-Corning's motions because delaying trial in order to require compliance with Paragraph 7 was unnecessary in light of the fact that Mrs. Prekler previously had submitted a complete list of witnesses and had provided Owens-Corning with all necessary medical releases in her answers to interrogatories. And, because discovery was not restricted while the litigation was pending in the Eastern District of Pennsylvania, Owens-Corning was free to continue its investigation into the allegations of the complaint. Clearly, the principles supporting the adoption of pretrial orders in asbestos cases are not served by slavish adherence to a pretrial order by the district court when its requirements already have been met. Moreover, Owens-Corning has failed to show that it has suffered any prejudice as a result of the denial of its motions. We therefore conclude that the district court did not abuse its discretion.
 
 III.
 
 10
 Owens-Corning next claims that the verdict is unsupported by the evidence because Mrs. Prekler did not adequately prove that Mr. Prekler was exposed to asbestos dust from Kaylo, the asbestos-containing insulation product manufactured by Owens-Corning. The standard of review for sufficiency of the evidence is whether a jury reasonably could have returned a verdict for the plaintiff. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 351 (4th Cir.1994).
 
 
 11
 The parties agree that under North Carolina law, Mrs. Prekler may prevail only if she can show that exposure to Kaylo was a proximate cause of Mr. Prekler's death--i.e., that it was a "substantial factor" in precipitating his mesothelioma. Wyatt v. Gilmore, 290 S.E.2d 790, 791 (N.C. Ct.App.1982). A defendant's conduct is a substantial factor when it "has such an effect in producing the harm as to lead reasonable men to regard it as a cause" of the harm. Restatement (Second) of Torts Sec. 431 cmt. a (1965).
 
 
 12
 Owens-Corning's argument that the evidence was insufficient to support a finding that exposure to Kaylo was a substantial factor in causing Mr. Prekler's illness is based on the fact that during his deposition he never specifically identified Kaylo as one of the products to which he was exposed while at Diamond-Shamrock. However, as a boilermaker Mr. Prekler did not handle asbestos products himself; rather, such products were utilized by other employees in close proximity to him. Thus, it is not surprising that although Mr. Prekler did recognize several asbestos products used at the Diamond-Shamrock plant, he was not intimately familiar with the names and packaging of all such products.
 
 
 13
 Nevertheless, there is ample circumstantial evidence to support the verdict. Circumstantial evidence may support a finding of substantial causation when "there [is] evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir.1986).[3] "[T]here must be evidence of a reasonable and rational nature upon which a jury can make the necessary inference that there is a causal connection between a defendant's action and a plaintiff's injury." Id. at 1163.
 
 
 14
 The evidence presented by Mrs. Prekler easily satisfies this standard. Several of Mr. Prekler's coworkers, all of whom were pipefitters or insulators and utilized asbestos products, testified that they were regularly assigned to insulate pipes in areas near Mr. Prekler and the other boilermakers; that their activities (hammering and sawing blocks of asbestos-containing insulation) frequently created clouds of asbestos dust so thick that the area appeared "all snowy"; that the asbestos dust would drift into Mr. Prekler's work area; and that Kaylo was the product most frequently used at the Diamond Shamrock plant. This evidence is more than adequate to sustain the verdict.[4] See Roehling v. National Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1227-28 (4th Cir.1986) (evidence sufficient when plaintiff testified that he was assigned to a limited area of a power plant and two insulators assigned to the same area at the same time testified that they regularly utilized defendants' asbestos-containing insulation).
 
 
 15
 Having concluded that the district court did not abuse its discretion in denying the motions to continue the trial and to compel discovery and that the evidence was sufficient to sustain a verdict for Mrs. Prekler, we affirm.
 
 AFFIRMED
 
 
 [1]
 Mr. Prekler died during the course of the litigation and Mrs. Prekler, as Executrix of his estate, was substituted for him. For the sake of convenience, we refer to Mrs. Prekler as though she were the sole plaintiff
 
 
 [2]
 All defendants except Owens-Corning were dismissed prior to trial and are not parties to this appeal
 
 
 [3]
 Although Lohrmann applies Maryland law, both parties agree that it supplies standards which govern this case. And, we have found no indication that application of the Lohrmann standards would conflict with North Carolina law
 
 
 [4]
 Owens-Corning also maintains that the testimony of experts for Mrs. Prekler should be rejected because their conclusions regarding whether exposure to Kaylo was a substantial factor in causing Mr. Prekler's death were "based on hypotheticals which were not supported by the evidence presented." However, this assertion is accurate only if one accepts Owens-Corning's argument that the evidence was insufficient to show that Mr. Prekler was exposed to asbestos dust from Kaylo. Because the evidence clearly is adequate to establish Mr. Prekler's exposure to Kaylo, we reject the contention that the experts' testimony was not supported by the evidence